```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
In Re UBS AUCTION RATE              :    08 Civ. 2967 (LMM)
SECURITIES LITIGATION               :
                                    :    MEMORANDUM AND ORDER
This Document Relates To:           :
08 Civil 2967, 08 Civil 3082,       :
08 Civil 4352, 08 Civil 2753, and   :
08 Civil 5251.                      :
                                    :
------------------------------------x
```

McKENNA, D.J.,

**1.**

The above matter, presently, comprises two putative class actions brought against the same defendants, under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule 10b-5, alleging fraud in the sale to members of the alleged classes of auction rate securities.[1] In very summary form, the gravamen of the complaints is that the defendant UBS entities misrepresented auction rate securities as liquid investments, which they were not, that an appearance of liquidity was given the securities through the support of the auction rate securities market by the UBS entities and other broker-dealers, and that, on or about February 13, 2008, all of the major broker-dealers, including UBS,

---

[1] The two cases are Chandler, et al. v. UBS AG, et al., 08 Civ. 2967, and Sanchez v. UBS AG, et al., 08 Civ. 3082, which were consolidated for all purposes by a stipulation so ordered by the Court on May 16, 2008.

withdrew their support of the market, rendering some $300 billion of outstanding auction rate securities illiquid.

**2.**

Before the Court are motions (i) to consolidate with the present matter three cases, Bonnist v. UBS AG, et al., 08 Civ. 4352, Kassover v. UBS AG, et al., 08 Civ. 2753, and Streit v. UBS AG, et al., 08 Civ. 5251, (ii) for the appointment of lead plaintiff and lead counsel in all of the cases except Kassover and (iii) for the appointment of interim class counsel in Kassover.

**3.**

"Rule 42 of the Federal Rules of Civil Procedure provides that the Court may consolidate 'actions involving a common question of law or fact.' A determination on the issue of consolidation is left to the sound discretion of the Court." Albert Fadem Trust v. Citigroup Inc., 239 F.Supp.2d 344, 347 (S.D.N.Y. 2002) (quoting Fed. R. Civ. P. 42(a)) (other citations omitted).

The Bonnist case is premised on substantially the same facts as the present matter and alleges, as do the plaintiffs in the present matter, the violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. It comes within the terms of the stipulation so ordered by this Court on May 16, 2008 (see n.1., supra), and there is no objection to its consolidation with the present matter. The motion for its consolidation with the present matter is granted.

The Kassover complaint, now amended, on the other hand -- while arising out of the same facts as the Chandler, Sanchez and Bonnist complaints, and brought against two of the three UBS entities named as defendants in those cases, and also a putative class action -- does not assert any claims under the Securities Exchange Act or Rule 10b-5, but only a claim under the Investment Advisers Act of 1940 and claims under a state statute and state common law. As counsel for the Kassover plaintiffs point out, the absence of allegations under the Securities Exchange Act (or the Securities Act of 1933) means that the case is not subject to the requirements and restrictions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), including the mandatory stay of discovery during the pendency of any motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B).[2]

"The trial court has broad discretion to determine whether consolidation is appropriate. In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation. However, the discretion to consolidate is not unfettered. Considerations of convenience and

---

[2] Aric A. and Mary Streit, as Trustees for the Benefit of the Streit Living Trust, who have filed a motion for their appointment as lead counsel herein, have filed a complaint subsequent to the filing of the motion for their appointment as lead counsel. Streit v. UBS AG, 08 Civ. 5251. That complaint alleges the violation of the Investment Advisors Act as well as of Sections 10(b) and 20(a) of the Securities Exchange Act. The Streits seek appointment as interim lead counsel for the Investment Advisors Act claims, as well as appointment as lead counsel in the present matter. See below.

3

economy must yield to a paramount concern for a fair and impartial trial." Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) (citations omitted). In the present situation, plaintiffs' counsel in Kassover has made a legally respectable choice to proceed only under the Investment Advisors Act in order to avoid the difficulties posed by the PSLRA, one of which is delay.[3] A limited consolidation of Kassover is granted, however, in the interests of the orderly prosecution of these cases and the limitation of expense. As the cases proceed determinations will be made as to how these goals can be best achieved.

The Streit case, insofar as it alleges claims under the Securities Exchange Act, is also consolidated with the present matter for substantially the same reasons given as to the Bonnist case; insofar as the Streit case alleges claims under the Investment Advisors Act and state law, a limited consolidation, as in the case of Kassover, is granted.

**4.**

The PSLRA governs the appointment of lead plaintiffs in class actions brought under the Securities Exchange Act. 15 U.S.C. § 78u-4(a)(3). It requires that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately

---

[3] Counsel for plaintiffs in Kassover have already amended the complaint and initiated discovery, and the case has been referred to a Magistrate Judge for, inter alia, supervision of discovery.

4

representing the interests of class members. . . ."  Id. § 78u-4(a)(3)(B)(i).  The court, further, "shall adopt a presumption that the most adequate plaintiff in any private action arising under [the Securities Exchange Act] is the person or group of persons that -- (aa) has either filed the complaint or made a motion in response to a notice under [id. § 78u-4(a)(3)(A)(i)]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Id. § 78u-4(a)(3)(B)(iii)(I).  The presumption is rebuttable.  Id. § 78u-4(a)(3)(B)(iii)(II).

Five motions seeking appointment as lead counsel in the cases seeking relief under the Securities Exchange Act have been filed.

**(i)**

One is by a group consisting of David Chandler, Shelly Chandler, Robert Bee, Edward Taras, Larry S. Watanabe, David Ghiz, and M. Richard Goldberg (all, collectively, the "Chandler Group"), which, collectively, purchased $31,675,083 worth of auction rate securities from UBS during the class period (presumably referring to the period March 21, 2003 through February 13, 2008, the period alleged in the Chandler complaint) and, in light of recent issuer redemptions, now holds approximately $25,675,000 of auction rate

securities.  (Chandler Group Mem., May 19, 2008, at 1; Chandler Group Response, June 9, 2008, at 3.)

**(ii)**

A second is by a group consisting of Ricardo Sanchez, Steven Sun, Martha Brixhoff, Paul Brixhoff, Linda Janczyck, Jeanne Walters, Vicki Hall, Marilyn Lesser, Arthur Gales, Steven Divito, Nasir Khalidi, Randy Lederman, Susan Silverman individually and as Trustee for Bessy Einhorn Family Trust, and Charles Silverman, individually and as Trustee for Charles C. Silverman Trust (all, collectively, the "Sanchez Group"), which, collectively, purchased $6,450,000 of auction rate securities from UBS during the class period (presumably referring to the period March 21, 2003 through February 13, 2008, the period alleged in the Sanchez complaint), and, in light of the sale (at a loss) by Mr. Sanchez of auction rate securities holdings of $550,000, now holds $5,900,000 of auction rate securities.  (Sanchez Group Mem., May 20, 2008, at 1 & 9 n.3.)

**(iii)**

A third is by a group consisting of Randolph Bonnist and Teachers Count (both, collectively, the "UBS ARS Group"), which, collectively, purchased $1,095,000 or $1,145,000 worth of auction rate securities from UBS during the class period (presumably, the period May 8, 2003 through February 13, 2008, the period alleged in the Bonnist complaint), and, as far as appears, now holds that

amount.  (Bonnist Mem., May 20, 2008, at 2; Flannery Decl., May 20, 2008, Ex. B, Bonnist & Teachers Count certifications.)

**(iv)**

A fourth is by one class member, Steven Oppenheimer, who purchased from UBS, during the class period March 21, 2003 through February 13, 2008, and still holds, $1,550,000 of auction rate securities.  (Glavin Decl., May 20, 2008, Ex. B, Oppenheimer certification).

**(v)**

A fifth is by a group consisting of the Streits (see n.2, supra), which purchased $16,850,000 in auction rate securities from UBS during a class period and still hold that amount.  (Streit Mem., May 20, 2008, at 1.)  The Streits also purchased $3,450,000 of auction rate securities from a broker/dealer other than UBS, which securities are now held by UBS, and have borrowed, to sustain their business, over $10,000,000 from UBS.  (Id.)

On the information set forth in the motions, it is evident that either the Chandler Group or the Streits have the largest financial interest in the relief sought, an issue which turns on a resolution of how their respective interests are calculated.  Before considering that issue, however, it is necessary to address certain questions as to the interpretation of relevant provisions of the PSLRA.

5.

The PSLRA itself says that a court is to appoint as lead counsel "the member or members" of the class that the court determines to be most capable of adequately representing the interests of class members, and that that "most adequate plaintiff" is "the person or group of persons" that (in addition to other requirements) has the largest financial interest in the relief sought by the class.  15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I). The legislative history of the PSLRA has suggested a number of glosses on the statutory language.

The first is the (no doubt correct) perception that the PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs. See In re eSpeed Sec. Litig., 232 F.R.D. 95, 99-100 & n.23 (S.D.N.Y. 2005). See also James D. Cox & Randall S. Thomas, "Does the Plaintiff Matter?," 106 Columbia L. Rev. 1587, 1588-89 (November 2006) ("The Congress clearly envisioned that various financial institutions -- pension funds, insurance companies, and mutual funds -- were the most likely types of investors who could combine a large financial stake in the suit's outcome with the sophistication to guide the suit to an appropriate result.")

Here, however, no institutional investor of the sort contemplated has come forward as a candidate for the lead plaintiff job.[4]

Another issue is the propriety of the aggregation of the financial stakes of multiple class members to achieve the required "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

One line of district court cases concludes that such aggregation "defeats the purpose of choosing a lead plaintiff." Goldberger v. FXRE Group, Ltd., 2007 WL 980417, at *4 (S.D.N.Y. Mar. 30, 2007). That position, it has been recently said, "is now the minority view." Reimer v. Ambac Financial Group, Inc., 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (citations omitted). Another line "recognizes that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA." Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (citation omitted). This Court, based upon the plain meaning of the unambiguous statutory language, follows this line of cases. Some cases, while allowing

---

[4] The UBS ARS Group includes Teachers Count, a "non-profit organization whose mission is to raise the status of the teaching profession and provide resources to the education community" (Flannery Supplemental Decl., May 30, 2008, Ex. A. at 1), which purchased $25,000 of auction rate securities during the class period. The UBS ARS Group characterizes Teachers Count as "an institutional investor that is precisely the type of lead plaintiff Congress sought to attract to the PSLRA process." (UBS ARS Response, May 30, 2008, at 5.) Even if that is correct -- and it can surely be questioned -- the financial interest of the UBS ARS Group is plainly not large enough to qualify the group as lead plaintiff under the statutory language of the relevant provisions of the PSLRA.

aggregation, have expressed concern over the aggregation of so many class members that the PSLRA's "express purpose of placing the control of securities class actions with a small and finite number of plaintiffs (as opposed to plaintiffs' counsel) becomes wholly undermined by the sheer size of the proposed plaintiff group." Id. (citation omitted). Groups of six through nine aggregated class members have been found not to be too large. Barnet v. Elan Corp., PLC, 236 F.R.D. 158, 162 (S.D.N.Y. 2005).

**6.**

As noted above, the Chandler Group (of seven class members) now holds (after deduction of redemptions) approximately $25,675,000 in illiquid auction rate securities. (Chandler Group Response, June 9, 2008, at 3.) The Streits contend that they hold $16,850,000 of auction rate securities purchased from defendants (Streit Response, June 9, 2008, at 3), but that there must, for PSLRA purposes, be added to that amount the $10.1 million that they have had to borrow from UBS because of the illiquidity of their auction rate securities, in order to "maintain their real estate business and to self-insure their properties." (Id. at 3-4). Thus, the Streits argue, their "total financial interest in this litigation exceeds $26,850,000," and "[t]hat amount substantially exceeds the $24,731,583 in face amount of [auction rate securities] that are held by all the Chandler movants after accounting for past

redemptions and additional redemptions that have been announced and will shortly be implemented." (Id. at 6 (footnote omitted).)

The $10.1 million borrowed by the Streits should not, logically, be added to the amount of auction rate securities they hold. In the first place, there has been no showing that their particular problem -- the need to borrow the $10.1 million to pursue their real estate business in view of the illiquidity of their auction rate securities -- is, in any way, typical of the alleged class; in the second place, exposure in the case of this consequence of the collapse of the auction rate securities market is not fairly measured by the amount of the funds borrowed but only by the cost of borrowing. In short, the Streits have not shown that they have a larger financial interest in the litigation than the Chandler Group. Arguments based on future redemptions and that such redemptions are more likely to affect the Chandler Group than the Streits are too speculative to take into account. At $24,731,583, the Chandler Group's stake in the litigation is greater than that of the Streits or any other of the movants for lead plaintiff appointment. Accordingly, the Court finds that the Chandler Group is presumed to be the most adequate plaintiff.

### 7.

The presumption that the most adequate plaintiff is the Chandler Group has not been overcome. The Group has shown that they are sufficiently cohesive to consider the issues in, and the

11

progress of, the case and to communicate with counsel. Further, the Chandler Group "has made a preliminary showing of typicality and adequacy under Rule 23 sufficient to satisfy the requirements of the PSLRA." Albert Fadem Trust, 239 F.Supp.2d at 347. The claims of the numbers of the group are clearly typical of those of the class, and "there is no indication or evidence of conflict of interest between members of the [Chandler Group] and members of the purported class." Id. at 348.

The Chandler Group is appointed as lead plaintiff as to all claims brought under the Securities Exchange Act.

### 8.

Under the PSLRA, the most adequate plaintiff -- here, the Chandler Group -- selects and retains counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Chandler Group's selections -- Girard Gibbs LLP (Lead Counsel), Stueve Siegel Hanson LLP (Co-Lead Counsel) and Seeger Weiss LLP (Liaison Counsel) -- are therefore appointed as counsel for Securities Exchange Act claims.

### 8.

The PSLRA, of course, does not govern the appointment of class counsel in cases brought under the Investment Advisors Act and state law. Counsel in the Kassover case did the initial work on those claims, and it makes sense that they should remain responsible for prosecuting those claims. Those counsel --

Schoengold Sporn Laitman & Lometti -- are appointed as interim class counsel for Investment Advisors Act and state law claims.

**9.**

Copies of this Memorandum and Order are being sent to counsel for defendants and to Seeger Weiss LLP, who are to fax copies forthwith to all counsel on the plaintiffs' side.

SO ORDERED.

Dated: July 16, 2008

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Lawrence M. McKenna
　　　　　　　　　　　　　　　　U.S.D.J.